UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| BEVERLY M.,[1] | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | No. 2:20-cv-00510-JMS-MJD |
| | ) | |
| KILOLO KIJAKAZI, Acting Commissioner of the Social Security Administration, | ) ) | |
| | ) | |
| *Defendant*. | ) | |

## ENTRY REVIEWING THE COMMISSIONER'S DECISION

Plaintiff Beverly M. filed an application for disability insurance benefits ("DIB") on July 18, 2017 and an application for supplemental security income ("SSI") on June 13, 2019. [Filing No. 12-5 at 2-3; Filing No. 12-5 at 10-15.] Her DIB application was denied initially, [Filing No. 12-3 at 2-15], and upon reconsideration, [Filing No. 12-3 at 17-30]. Administrative Law Judge ("ALJ") Frederic Roberson held a hearing on both applications on July 3, 2019, and issued an opinion on November 27, 2019, concluding that Beverly M. was not entitled to DIB or SSI benefits. [Filing No. 12-2 at 17-34.] The Social Security Administration Appeals Council denied review on August 21, 2020. [Filing No. 12-2 at 2.] Beverly M. timely filed this civil action asking the Court to review the denial of benefits pursuant to 42 U.S.C. §§ 405(g) and 1383(c). [Filing No. 1.]

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

**I.**

**STANDARD OF REVIEW**

"The Social Security Administration (SSA) provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1151 (2019). Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) (citing 42 U.S.C. § 423(d)(1)(A)).

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Stephens*, 888 F.3d at 327. "[S]ubstantial evidence" is such relevant "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens*, 888 F.3d at 327. Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'" *Zoch*, 981 F.3d at 601 (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)). The Court does "determine whether the ALJ built an 'accurate and logical bridge' between the evidence and the conclusion." *Peeters v. Saul*, 975 F.3d 639, 641 (7th Cir. 2020) (quoting *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014)).

The SSA applies a five-step evaluation to determine whether the claimant is disabled. *Stephens*, 888 F.3d at 327 (citing 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4)). The ALJ must evaluate the following, in sequence:

(1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000) (citations omitted).[2]  "If a claimant satisfies steps one, two, and three, she will automatically be found disabled.  If a claimant satisfies steps one and two, but not three, then she must satisfy step four.  Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy."  *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe."  *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009).  In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling."  *Id.*  The ALJ uses the RFC at Step Four to determine whether the claimant can perform his own past relevant work and if not, at Step Five to determine whether the claimant can perform other work.  *See* 20 C.F.R. § 404.1520(a)(4)(iv), (v).

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits.  *Stephens*, 888 F.3d at 327.  When an ALJ's decision does not apply the correct legal standard, a remand for further proceedings is usually the appropriate remedy.  *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021).  Typically, a remand is also

---

[2] The Code of Federal Regulations contains separate, parallel sections concerning SSI and DIB, which are identical in most respects.  Cases may reference the section pertaining to DIB, such as in *Clifford*, which cites 20 C.F.R. § 404.1520.  227 F.3d at 868.  Generally, a verbatim section exists establishing the same legal point with both types of benefits.  *See, e.g.*, 20 C.F.R. § 416.920.  The Court will usually not reference the parallel section but will take care to detail any substantive differences applicable to the case.

appropriate when the decision is not supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). "An award of benefits is appropriate only where all factual issues have been resolved and the 'record can yield but one supportable conclusion.'" *Id.* (quoting *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993)).

## II.
### BACKGROUND

Beverly M. was 40 years old as of her DIB application date.  [*See* Filing No. 12-5 at 2.] She alleged disability beginning on May 28, 2010 due to neck and spine damage, scoliosis, post-traumatic stress disorder ("PTSD"), severe anxiety, depression, chronic obstructive pulmonary disease, polycythemia, ulcers, high blood pressure, and borderline personality disorder.  [Filing No. 12-3 at 2-3; Filing No. 12-5 at 3; Filing No. 12-5 at 10.][3]

The ALJ followed the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 404.1520(a)(4) and concluded that Beverly M. was not disabled.  [Filing No. 12-2 at 17-34.] Specifically, the ALJ found as follows:

- At Step One, Beverly M. had not engaged in substantial gainful activity[4] since May 28, 2010, the alleged onset date.  [Filing No. 12-2 at 20.]

- At Step Two, Beverly M. has the following severe impairments: cervical, thoracic, and lumbar degenerative disc disease; s/p cervical spine fusion surgery; obesity; depression; borderline personality disorder; PTSD; and generalized anxiety disorder.  [Filing No. 12-2 at 20.]

- At Step Three, she did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  [Filing No. 12-2 at 21.]

---

[3] The relevant evidence of record is amply set forth in the parties' briefs and need not be repeated here.  Specific facts relevant to the Court's disposition of this case are discussed below.

[4] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized).  20 C.F.R. § 404.1572(a).

- After Step Three but before Step Four, Beverly M. had the RFC "to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that [she] can perform occasional bilateral overhead reaching; frequent gross manipulation, handling, grasping, turning, and gripping; and frequent fingering, feeling, gripping, and fine manipulation. The claimant can occasionally climb stairs and ramps; never climb ladders, ropes, or scaffolds; can perform occasional balancing, stooping, and kneeling; and can never crouch or crawl. The claimant must avoid concentrated exposure to dusts, fumes, gases, excessive cold, humidity, and other respiratory irritants. The claimant can tolerate occasional interaction with the general public. The claimant cannot perform tasks requiring close coordination with co-workers, but can have frequent interactions with supervisors." [Filing No. 12-2 at 23-24.]

- At Step Four, Beverly M. was unable to perform her past relevant work as an injections molding machine operator and cashier. [Filing No. 12-2 at 32.]

- At Step Five, relying on the testimony of the vocational expert ("VE") and considering Beverly M.'s age, education, work experience and RFC, there were jobs that existed in significant numbers in the national economy that she can perform, such as table worker, addressing clerk, and document preparer. [Filing No. 12-2 at 33-34.]

### III.
### DISCUSSION

Beverly M. argues that the ALJ committed two errors: (1) after accepting the opinions of state agency psychologists that Beverly M. can have no more than superficial interaction with co-workers, the ALJ failed to include that limitation in the RFC or in the hypothetical questions to the VE; and (2) after the VE testified that Beverly M. would need to be on task at least 90 percent of the time, the ALJ failed to address that issue. [Filing No. 14 at 2.] The Court will address each argument in turn.

### A. Whether the ALJ Adequately Addressed Beverly M.'s Ability to Interact with Others

Beverly M. argues that two state agency psychologists found that she was limited to no more than superficial interaction with co-workers and supervisors, and that the ALJ did not reject that opinion but also did not account for it in the RFC or the hypothetical questions to the VE.

5

[Filing No. 14 at 15-20.]  According to Beverly M., in limiting her to occasional interaction with the public and specifying that she cannot perform tasks requiring "close coordination" with co-workers but can have frequent interaction with supervisors, the ALJ described only the frequency of interactions with others, not their intensity or quality.  [Filing No. 14 at 16.]  Beverly M. asserts that the phrase "close coordination with co-workers" is vague and does not account for whether the interaction would be greater than superficial, so eliminating all jobs that require "close coordination with co-workers" would not fully account for Beverly M.'s anger problems or her limitation to no more than superficial interactions.  [Filing No. 14 at 16-17.]  Because a flawed RFC determination was the basis for the questioning of the VE, Beverly M. contends that the ALJ's decision cannot stand.  [Filing No. 14 at 17-18.]  In addition, Beverly M. asserts that the ALJ's error is material because several other courts have recognized that individuals who are limited to no more than superficial contact with co-workers or supervisors often cannot complete the probationary or training periods required for many jobs.  [Filing No. 14 at 18-20.]

The Commissioner responds that, contrary to Beverly M.'s assertion, the ALJ rejected the opinions of the state agency psychologists, sufficiently explained that rejection, and did not have to include the limitation to superficial interaction with others in the RFC or the hypothetical questioning to the VE.  [Filing No. 15 at 8-10.]  The Commissioner argues that the ALJ was not required to accept the psychologists' opinions, and that the ALJ complied with all applicable regulations in concluding that the opinions were only "somewhat persuasive."  [Filing No. 15 at 8-9.]  According to the Commissioner, Beverly M. does not dispute that substantial evidence supports the ALJ's conclusion that the opinions were only "somewhat persuasive," and even though she "might have wanted the ALJ to phrase the decision differently, . . . that does not show the ALJ erred in this case."  [Filing No. 15 at 9-10.]  The Commissioner further argues that

substantial evidence supports the limits that the ALJ established for Beverly M.'s interaction with others because despite her anger and temper issues, medical records indicate that she was generally pleasant and cooperative, related well to a consultative examiner and made good eye contact, took care of her two children, spent time with her family, and shopped.  [Filing No. 15 at 11-12.]  Finally, the Commissioner contends, even if Beverly M. was correct that the ALJ should have included a limitation to superficial contact with others, she cannot show that she was harmed by the ALJ's failure to do so, because the VE did not testify that a probationary period was required for any of the identified jobs or that a limitation to superficial contact would preclude performance of those jobs, and the Dictionary of Occupational Titles shows that the jobs do not require hearing or talking at all, and therefore would not require more than superficial interaction with others. [Filing No. 15 at 12 n.11.]

In reply, Beverly M. acknowledges that the ALJ was not required to adopt the opinions of the state agency psychologists.  [Filing No. 18 at 1-2.]  However, Beverly M. disagrees with the Commissioner's contention that the ALJ rejected those opinions, and instead argues that the ALJ accepted those opinions as they related to her ability to interact with others.  [Filing No. 18 at 3-4.]  Beverly M. asserts that "[t]he ALJ's reasoning causes further doubt about precisely what the ALJ thought of the psychologists' opinions," and "[she] and this Court should not have to guess" what conclusion was reached or why.  [Filing No. 18 at 4.]  According to Beverly M., the psychologists were both presented with evidence that she was pleasant and cooperative at medical appointments, and any additional evidence of a pleasant and cooperative demeanor was not a logical or sufficient reason to discount the psychologists' opinions.  [Filing No. 18 at 5-7.]  Beverly M. argues that if it is true that additional evidence not considered by the psychologists "changed the picture so much that it caused the ALJ to reject those opinions," the ALJ was required to explain

his reasoning and to consult an additional medical expert on the issue of Beverly M.'s ability to interact with others.  [Filing No. 18 at 7-9.]  She further asserts that the ALJ's error was not harmless, and there was no testimony by the VE about the impact of a limitation to superficial interaction because the ALJ failed to raise the issue.  [Filing No. 18 at 10.]  She contends that the cases cited in her opening brief "show that had the ALJ included the limitation in a hypothetical question, the VE's likely answer would have been that the hypothetical individual would have been unable to complete the probationary period."  [Filing No. 18 at 10.]  Beverly M. argues that it is irrelevant that the jobs used to deny her claim do not require any hearing or talking, because this argument overlooks the fact that a new employee would need time to learn the job and that more than superficial contact with others would be required during the learning period.  [Filing No. 18 at 10-11.]

Two state agency psychological consultants, Dr. Maura Clark and Dr. B. Randal Horton, both opined that:

> [T]he claimant can understand, remember, and carry out detailed, but not complex tasks. The claimant can relate on a superficial and ongoing basis with co-workers and supervisors. The claimant can attend to tasks for a sufficient period to complete tasks. The claimant can manage the stresses involved with detailed work-related tasks.

[Filing No. 12-3 at 12 (Dr. Clark at the initial level); Filing No. 12-3 at 27 (Dr. Horton at the reconsideration level).]  In evaluating those opinions, the ALJ stated:

> These opinions are somewhat persuasive.  The only real limitations identified by the Psychological Consultants were related to complex tasks and interaction with co-workers and supervisors.  Insofar as they did not find more restrictive limitations, their opinions are broadly consistent with a history of largely outpatient treatment, other than a short hospital stay in May 2019 that was triggered by external stressors.  Moreover, their opinions are generally consistent with findings of good hygiene and grooming and the claimant's ability to live by herself and, in the past, care for two children.

However, I have departed from the Psychological Consultant opinions in several respects. Although the Psychological Consultants supported their conclusions with a discussion of the available evidence, they did not have access to the full hearing-level record. Moreover, a limitation on performing complex tasks is inconsistent with treatment notes showing intact memory and attentiveness; the claimant's ability to complete five serial seven subtractions correctly; and activities of daily living such as preparing simple meals, driving, shopping, and counting change. A limitation to superficial interactions is not entirely inconsistent with findings of pleasant and cooperative behavior. Notably, even if the claimant were limited to unskilled work due to her mental impairments, this would not prevent her from performing the jobs identified by the vocational expert below.

[Filing No. 12-2 at 26-27 (internal citations omitted).]

The parties dispute whether the ALJ, in the discussion quoted above, rejected or accepted the psychological consultants' opinions that Beverly M. can relate on a superficial and ongoing basis with co-workers and supervisors. On one hand, the ALJ's statement that he "departed from" the opinions, coupled with the discussion of superficial interaction in that same paragraph, suggests that he meant to reject the opinions to the extent they limited Beverly M. to only superficial interactions. On the other hand, the statement that "[a] limitation to superficial interactions *is not entirely inconsistent with* findings of pleasant and cooperative behavior" indicates that such a limit *is consistent with* the medical records, and therefore was accepted.

This ambiguity in the ALJ's decision is problematic. It is well established that an ALJ must sufficiently articulate his findings in a way that permits the reviewing court to trace the path of his reasoning, assess the validity of the findings, and afford the claimant meaningful judicial review. *E.g.*, *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). Here, it is unclear whether the ALJ agreed or disagreed that Beverly M. was capable of having no more than superficial interactions with others. And, although the ALJ placed some limitations on Beverly M.'s interactions with others—stating that she could have "occasional" contact with the public and "frequent" contact with supervisors, but could not be required to act in "close coordination" with co-workers—it is

unclear whether and how these limitations are related to the psychologists' opinions that she should be limited to superficial interactions.  For one thing, "occasional" and "frequent" describe the number or rate of interactions, while "superficial" and "close coordination" appear to describe the nature or quality of interactions.  Moreover, it is unclear whether the ALJ intended "close coordination" to mean the opposite of "superficial," prohibiting Beverly M. from having more than superficial interactions with her co-workers, or whether "close coordination" means something else entirely.

The Court need not delve further into the parties' arguments concerning whether any error committed by the ALJ was harmless, or whether it would be proper to presume that a probationary period would be necessary for the identified jobs without explicit VE testimony to that effect, because the Court's finding that it cannot trace the ALJ's reasoning with certainty is sufficient to require remand.  In any event, for the reasons discussed below, the ALJ committed a second error requiring remand.

### B.  Whether the ALJ Failed to Address Beverly M.'s "Off Task" Time

Beverly M. argues that the ALJ erred in failing to address whether she would be able to stay on task for at least 90 percent of the workday in light of the VE's testimony that employees are expected to be on task 90 percent of the time.  [Filing No. 14 at 20-21.]  Beverly M. relies on *Lothridge v. Saul*, 984 F.3d 1227 (7th Cir. 2021), in which the Seventh Circuit remanded based on the ALJ's failure to decide one way or the other whether the claimant's limitation in maintaining concentration, persistence, and pace would have permitted her to meet the 90 percent on-task threshold expressed by the VE, and argues that the same result is required here.  [Filing No. 14 at 20-21.]

The Commissioner responds that the ALJ's finding of a mild limitation in the area of concentrating, persisting, and maintaining pace did not require the ALJ to include additional limitations in the RFC.  [Filing No. 15 at 12-15.]  The Commissioner asserts that the ALJ considered Beverly M.'s mental impairments, provided an analysis showing why Beverly M.'s subjective complaints regarding an alleged inability to concentrate were unsupported, detailed evidence that supported the RFC finding, and explained why the record did not support greater limitations.  [Filing No. 15 at 15-16.] According to the Commissioner, *Lothridge* is distinguishable because in that case, the ALJ found a moderate limitation in the area of concentrating, persisting, and maintaining pace and the ultimate RFC determination did not account for a moderate limitation.  [Filing No. 15 at 16.]  The Commissioner argues that in this case, Beverly M.'s limitation was mild and the ALJ properly accounted for it in determining her RFC.  [Filing No. 15 at 16.]

In reply, Beverly M. argues that it is irrelevant that her limitation was deemed mild while the claimant in *Lothridge* had a moderate limitation, because the fact remains that the ALJ in this case did not address whether Beverly M. could be on task at least 90 percent of the time.  [Filing No. 18 at 11-12.] Beverly M. maintains that the ALJ was required to consider that issue and make a determination one way or the other.  [Filing No. 18 at 11-13.]  She further argues that the ALJ had a duty to consider all of her impairments—including her mild limitation in concentrating, persisting, and maintaining pace—and failed to do so, which constitutes clear legal error requiring remand.  [Filing No. 18 at 13-18.]

In *Lothridge*, the ALJ concluded that the claimant was moderately limited in the area of concentration, persistence, and maintaining pace, but did not account for those difficulties in the RFC determination, noting that restrictions were not warranted because the claimant was

"generally cooperative" and "able to do simple arithmetic." 984 F.3d at 1232-33. The Seventh Circuit vacated the ALJ's decision and remanded, concluding in relevant part that: (1) the RFC determination did not account for the moderate limitations in concentrating, persisting, and maintaining pace or contain any corresponding restrictions; and (2) although the VE had testified that a hypothetical worker with the claimant's other limitations would need to remain on task for 90 percent of the workday to be employable, the ALJ "did not address one way or another whether [the claimant] could meet those requirements." *Id.* at 1233. The court also observed that the ALJ had failed to build a logical bridge from the evidence to conclusion, recognizing that "[w]hether [the claimant] is congenial or able to add sums in a short-term encounter or examination has little or no apparent bearing on whether she can maintain pace or stay on task for an entire workday." *Id.*

The Court agrees with Beverly M. that *Lothridge* dictates the result in this case. As discussed above, the Seventh Circuit has recognized that the RFC analysis must articulate an "accurate and logical bridge between the evidence and the conclusion." *Peeters*, 975 F.3d at 641 (internal citations omitted). This analysis must include a combination of both non-severe and severe impairments. *See Martin v. Saul*, 950 F.3d 369, 374 (7th Cir. 2020) ("[T]he ALJ must account for the totality of a claimant's limitations in determining the proper RFC.") (internal citations omitted). The ALJ in this case noted that: (1) Beverly M.'s medical providers have observed that she is generally attentive, awake, and alert; (2) during one examination she was able to complete five serial subtractions correctly, repeat five numbers forward and three numbers backward, recall two out of three objects after five minutes, and answer one out of two change-counting problems correctly; and (3) Beverly M. was able to live by herself, prepare meals, drive, shop, and count change. [*See* Filing No. 12-2 at 22-23; Filing No. 12-2 27.] But, as was recognized

in *Lothridge*, these things have "little or no apparent bearing on whether she can maintain pace or stay on task for an entire workday." 984 F.3d at 1233.

Furthermore, the Court is not persuaded that the distinction between the moderate limitation at issue in *Lothridge* and the mild limitation found in this case renders *Lothridge* inapplicable.  Although the ALJ in this case deemed Beverly M.'s limitation "mild," that characterization does not have a numerical value and does not reveal whether she could or could not remain on task for at least 90 percent of the workday.  *See* 20 C.F.R. § Pt. 404, Subpt. P, App'x 1, § 12.00(F)(2)(b) (defining "mild limitation" to mean that "functioning in this area independently, appropriately, effectively, and on a sustained basis is slightly limited").

Here, as in *Lothridge*, the ALJ was obligated to consider the VE's testimony that a hypothetical claimant would need to be on task at least 90 percent of the time and to decide one way or the other whether Beverly M. can satisfy that threshold.  *See* 984 F.3d at 1233.  From his decision, the Court is unable to ascertain whether he did so.  In failing to articulate a clear finding regarding Beverly M.'s capacity to stay on-task in light of the VE's testimony, the ALJ did not construct a logical bridge between the evidence and his RFC determination.  Because of this error, the Court must remand this case for further consideration.  *See id.* at 1235.

## IV.
### CONCLUSION

Based on the foregoing, the Court **REVERSES** the ALJ's decision denying Beverly M. benefits and **REMANDS** this matter for further proceedings consistent with this opinion, pursuant to 42 U.S.C. §§ 405(g) (sentence four) and 1383(c).  Final judgment shall issue accordingly.


Date: 10/6/2021

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**<u>Distribution via ECF only to all counsel of record.</u>**